We'll move now to our final appeal of the morning. This is 24-1822, United States v. Duncan. And we're going to begin with oral argument on behalf of the appellant, Ms. Lee. Thank you, your honor. Good morning, and may it please the court. My name is Lauren Lee on behalf of the appellant, Thomas Duncan. We respectfully request that this court vacate Mr. Duncan's sentence and remand for resentencing for two independent reasons. First, the lower court erred in applying the multiple dives enhancement. And second, it erred in attributing all of the pattern purchases to Mr. Duncan in the absence of sufficient evidence by the government. Both errors resulted in a four offense level enhancement, which if vacated would reduce the advisory range by at least 30 months. Because errors in the guidelines calculations are presumptively prejudicial, and the sentencing court's inoculating statements were insufficient, these errors are not harmless. I'll address these in turn, but I'd like to begin with the loss amount. The sentencing court applied a 16 level enhancement, concluding that the loss amount attributable to Mr. Duncan was greater than $1.5 million. This is clearly erroneous because the government failed to present any evidence that the pattern purchases that were not directly attributable to Mr. Duncan, according to the purchasing data, were reasonably foreseeable. The amount at issue here is $370,000. And that amount is enough to reduce the loss amount enhancement by two levels. What's your theory on who could have instigated the pattern purchases, if not Mr. Duncan? I do note that it was Dingell who approached Duncan. So I'm not clear, are you suggesting that Dingell could have approached other unapprehended suspects and had the same kind of deal going with them as he did with Duncan? Or is there any reasonable explanation for someone else other than Duncan putting in those pattern orders above and beyond the $800,000? Thank you, Your Honor. And that's definitely a possibility. But the problem here is that it's the government's burden to prove what could have happened here, and they have failed to do that. The $370,000. What's their burden? Are they approved by what? To prove the loss amount. By what standard? By a preponderance of the evidence, Your Honor. And they can extrapolate, right? That happens all the time in loss cases.  OK. The $370,000 is the difference between the total amount of pattern purchases, which was just over $1.7 million, and the VA's purchasing data that referenced Mr. Duncan, according to the government, which was just over $1.3 million. Other than the fact that these are pattern purchases, the government has not presented any evidence linking this $370,000 to Mr. Duncan. The government argued, and the sentencing court agreed. Why is the pattern evidence not enough? That's pretty strong evidence. Sure, Your Honor. So the pattern purchases, and there was a lot of discussion during sentencing about that. The pattern purchases are the loss amount to the VA. But there's another step beyond that that's required at sentencing to determine which enhancement applies. And that's that the court must determine the amount of the loss that is attributable to each defendant. And that didn't happen here based on the evidence. Were there other defendants that were engaging in pattern purposes? We don't know the answer to that, again, because the government didn't prove that. Well, no, the government never proves a negative. There were no other. There were nobody else indicted. There were no other. You're not arguing that the losses were attributed, that there were others that participated in this bribery scheme to which the loss should have been attributed. You're just saying you don't know. That's correct, Your Honor. We don't. Yeah. And that's something that the government could have investigated. I understand that no one can prove a negative, right? But ultimately, we could have a lot more information in the record here about what could and ultimately did happen. Well, your client could have told you as well. I mean, there is that. I mean, I guess what I'm saying, I don't want to get into the various, but usually when there are multiple people that are involved in a scheme, a defendant will say my client was responsible for x but not y. And that didn't happen here in the district court is what I'm saying. Nobody said that, right? Right, and my response, Your Honor, would be that that's not the defendant's burden. I'm not saying that there's a defendant's burden at all, but the pattern evidence here is extraordinarily suspicious. And you're just saying that the government didn't prove that everybody else at the VA was innocent of engaging in patterned conduct, right? You should answer Judge Kerse's question. I have a follow-up question, though, because the language is the loss needs to be directly attributed to Mr. Duncan. So can you address that as you address Judge Kerse's question? Yes, and I think I understand it. I'm remembering your question. Forgive me if I'm not. And I think that this ultimately goes to what the government argued and what the sentencing court ultimately agreed with them about this issue. So on attribution specifically, the government pointed to the fact that Mr. Duncan sometimes directed his colleagues to place these orders. And the issue with that is that the ordering data does actually directly reflect when that happened. There was a comments field. We have over $500,000 in pattern purchases where the comments field says something along the lines of per Duncan, right? So the sentencing court, based on the government's argument, said, well, there's this universe of almost $400,000 in purchases that we don't know what's going on with, but we can assume that because we know that he was directing people to place these orders that this also falls into that category. And there's not enough evidence to suggest that that's the case, especially when the purchasing data already accounts for that situation. And to your question, Your Honor, this court in Newton has explained that for conduct to be attributable to the defendant that it must be reasonably foreseeable. The district court relied on speculation guised as an inference, but that does not satisfy the reasonable foreseeability standard. Proving reasonable foreseeability requires the government to establish a connection between these purchases and to Mr. Duncan, and they have not done so. For the remaining purchases to have been reasonably foreseeable to Mr. Duncan, the government needed to prove that they were directly connected to him or that he knew that someone else was placing these phantom orders for Dingell. Neither of those things have been shown. In the absence of evidence, the foreseeability question ultimately cannot be answered. And in this situation, all we're left with is speculation. We know from Newton that speculation is not enough. And this court in Newton vacated the appellant sentence for that exact reason. Here, the government just didn't meet its burden. Therefore, this finding is clearly erroneous. Next, I'd like to address the multiple bribes enhancement. Can I ask you one question before you get there? Do you have a harmless error problem here? Because these things were litigated sort of, I mean, they were really litigated to death in the district court, and the district court was pretty clear that he would have given the same sentence even if he would have found the loss amount in your favor or your client's favor. Your Honor, I'm happy to address harmless error next. So these errors were not harmless for two reasons. First, the errors in the guidelines calculations are presumptively prejudicial, and ultimately it's the government's burden to show that the sentence would have been the same absent these errors. And second, the sentencing court provided insufficient inoculating statements, which failed to provide a detailed explanation of the parallel result. We agree with the government about the language that the court used, but the issue is the sufficiency of that language. There's two passages in the transcripts that are at issue here. The first one is on April 10th on page 164. The second is on April 12th on page 43. This court explained in Ashbery that a sufficient inoculating statement should contain two things. First, a detailed acknowledgement of the contested guidelines issue, including the reduced offense level and the resulting advisory range. Here, the district court acknowledged that these two errors may have occurred, but ultimately nothing more. There was no acknowledgement that the offense level would have been reduced by four. There was no acknowledgement that the resulting advisory range would have been reduced by at least 30 months. Second, the statement needs to include an explanation of the parallel. Isn't that obvious?  Wasn't that obvious? I mean, you're saying the district court has to explicitly state that on the record as if the district judge didn't know that? I mean, I think- There's a whole argument at sentencing. You've got the pre-sentence report. Everyone's got it. The judge asked 10 times. Does everybody have it? He sets forth the guideline levels. You're arguing that it's a two or four level decrease. And now you're saying the district judge has to repeat that to have a sufficient inoculating statement? Your Honor, it's not just about repeating it. The purpose of this harmless error standard is for us to have confidence in the fact that the sentence would have been the same. And consideration of a properly calculated guidelines range is a requirement. It's not a formality. It's a requirement. And so if we don't know that the lower court, the district court, excuse me, was actually considering what the results of these potential errors would be, we don't know whether or not he was actually considering whether the sentence would be the same or not. Would you like to reserve the remainder of your time? Yes, please. Thank you, Your Honor. Thank you, Ms. Lee. We'll now move to oral argument on behalf of the athlete, Ms. Manshaw. May it please the court, Heidi Manshaw, on behalf of the United States. The district court here did not clearly err either in finding that the scheme that the defendant was involved in and involved more than $1.5 million worth of loss and that that full amount should be attributed to him. And the district court did not clearly err in finding that the scheme involved more than one bribe. I will start with the issue of the loss to pick up from where the appellant was arguing. Here, the pattern purchases were extremely suspicious, as Your Honor has noted. They involved quantities of these disposable blood pressure cuffs that were far in excess of any bonafide need of the VA. And they were initiated repeatedly by Mr. Duncan. Now, to be clear, the purchases were actually made by Mr. Duncan's subordinates. And so every time one of these orders was placed, it was initiated by one of those subordinates. The evidence of Mr. Duncan's involvement in it in each of those orders came from emails that were sent to those employees, instructing them to place the orders and from records within the VA's electronic purchasing system, as defense counsel just noted in the comment column of the purchasing records saying Mr. Duncan had initiated the purchase. But importantly, each of those subordinates who initiated those purchases, they were interviewed by investigators and the subordinates described how at times the instructions from Mr. Duncan would come to him verbally. And that was what the district court relied on in disagreeing with the defendant's position that only purchases for which there is one of those electronic records corroborating Mr. Duncan's involvement in the purchase should count. The district court disagreed with that because he explained it resonates with common sense that when those instructions were given verbally, there's not always going to be an electronic record of that instruction. And so the district court also noted that as your honors have pointed out, there was only one bribe payer and bribe payee here. The government did investigate whether there were anyone, whether anyone else was involved and found no evidence of another insider at the VA being involved in this bribe arrangement in exchange for these pattern of purchases. If this provision of the guidelines is incorporating bribery law by reference, should we incorporate the stream of benefits theory? So to the more than one bribe point, I don't think there's any need to get into the stream of benefits theory on the more than one bribe issue because just based on the text of the guideline itself, the conduct here meets the definition of being more than one bribe. Specifically, we have multiple payments in exchange for multiple official acts. And each of those exchanges of payments for official acts is a bribe. And that's a very common clear understanding of what a bribe is. So a stream of benefits theory, it typically involves something closer to that retainer concept, the idea that I'm in your pocket and I'm happy to do anything on your behalf in the future, but we haven't yet determined what those acts are gonna be. That's just not what happened here. What happened here as the district court found was that there was a lot of ad hoc negotiation of specific payments for specific orders over time. There wasn't some agreement on the front end and no further discussion. It was in fact, as heard on the reported calls from 2018, there was clear ad hoc negotiation of how much would be paid, how much would be involved in the order, which products would be involved in the order, all of which shows the negotiation of a single separate bribe on those calls. Speaking of what other courts are doing, do you know what other circuits have adopted the second circuit's R-shod factors? So the R-shod factors are certainly adopted by the second circuit itself. In addition, the third circuit in an unpublished case, believe it's Mariano, I believe references those R-shod factors. There's the fourth circuit in Harvey that also references those factors. To be clear, I'm not asking the court to adopt the R-shod test here. That test is kind of built around sort of three factors, the primary one being whether or not these payments are in exchange for distinct official actions. And I think that's where kind of the inquiry sort of ends here because we have so many distinct official actions. We have literally hundreds of VA orders that were placed. So I think we meet the R-shod test, but I don't think the court has to adopt it in order to find that we have more than one bribe here. Thank you. Unless there are any further questions from the panel, the government would ask that the district court's judgment be affirmed. Thank you very much, Ms. Matrack. Ms. Lee, we'll move back to you now for rebuttal. We'll give you two minutes for rebuttal. Thank you, Your Honor. I appreciate it. I'd like to first respond to a couple of comments that the government made about the attribution issue on Don't Boss Him Out. So first, the government is now saying that every time an order was placed, that that was by a subordinate, that's not true. There's nothing in the record that supports that fact. She also said that the agreed with us that the verbal instructions are noted in the system. So as I was saying before, for the court to then say that while the orders that don't have that note are also attributable to him because common sense, I just don't think that that's enough here. And ultimately, the government could have very easily proven this by just asking these subordinates that were placing the orders, what was their habit? Were there times that Mr. Duncan asked you to place these orders and you didn't make the note? That would answer this question here. And ultimately, that fact is not in the record. I'd like to very briefly address the multiple bribes issue as well. This conduct is one bribe. There was one agreement between Mr. Duncan and Dingell in August of 2012 to initiate and approve orders for disposable blood pressure cuffs in exchange for kickbacks. This was the same payor and payee, the same beneficiary, the same product, and the same conduct or official action for the same benefit. That's one bribe. From the Supreme Court's opinion in Snyder, we know that a bribe is an agreement for future action. Absent that agreement, all you have is a gratuity and there's been no debate about whether we are in the posture of having a bribe here versus a gratuity. We address the stream of benefits theory only to illustrate that the agreement can consist of a continuing course of conduct that results in multiple payments over time. But ultimately, the number of official actions or the number of payments are not dispositive on that issue. Reading the stream of benefits cases together with Snyder, we understand that this type of agreement is one bribe. And the letter of the language, excuse me, of the enhancement itself also focuses on the number of bribes or unlawful agreements. For the reasons that we've discussed here today and in our briefs, the district court erred in applying this enhancement as well as the loss of our enhancement. We ask that this court vacate Mr. Duncan's sentence and remand for resentencing. Thank you, Ms. Lee. Thank you, Mr. Kaminer, as well. Thank you, Ms. Manchrek. The case will be taken to revisement and we wanna thank and recognize your firm for all the work that you've given here for purposes of this point of position. So thank you. It's been a privilege. Thank you, Your Honor. You're welcome. The cases will all be taken to revisement and then we'll complete our oral arguments for this point.